**BELL & BECKWITH, Plaintiff,**

v.

**UNITED STATES of AMERICA, INTERNAL REVENUE SERVICE, Defendant-Appellee,**

**Donna D. Cannon, Defendant-Appellant.**

No. 83–3582.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 17, 1984.

Decided March 26, 1985.

Thomas P. Kurt, argued, Toledo, Ohio, for defendant-appellant.

Robert B. Gosline, Shumaker, Loop & Kendrick, Patrick J. Foley, Asst. U.S. Atty., Toledo, Ohio, Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Carleton D. Powell, argued, Douglas G. Coulter, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before KEITH, MARTIN and CONTIE, Circuit Judges.

KEITH, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Northern District of Ohio, distributing an interpleaded fund, less certain expenses, to the United States. For reasons stated below, we reverse the decision of the district court and remand with instructions to dismiss for lack of jurisdiction.

**Facts**

This case stems from an effort to collect the tax liabilities of Dr. Alan E. Zimmer. On August 28, 1981, the Internal Revenue Service (IRS) levied a tax lien on an investment account in the name of the appellant, Donna D. Cannon, and managed by plaintiff, Bell & Beckwith, a stock brokerage partnership. The government contends that Ms. Cannon is merely acting as the nominee of Dr. Zimmer, who provided the funds to set up the account. On September 1, 1981, the IRS demanded that Bell & Beckwith turn over the property in the investment account. On September 9, Bell & Beckwith received a letter from Cannon claiming ownership of the property and demanding full payment. Bell & Beckwith deposited $129,620.22 with the clerk's registry and brought an interpleader action to resolve adverse claims to the property. The complaint invoked jurisdiction under 28 U.S.C. §§ 1331, 1340, 1346, 2410 and Rule 22 of the Federal Rules of Civil Procedure.

On December 10, 1981, the government filed a request for admissions and served its first set of interrogatories on Donna Cannon. One week later the parties consented to have the case heard and judgment entered by a United States Magistrate pursuant to 28 U.S.C. § 636. Cannon repeatedly ignored, postponed, and evaded the government's discovery requests until September 1, 1982, when Cannon filed her response to the government's interrogatories. Subsequently, the government unsuccessfully attempted to depose Cannon. Cannon never appeared for scheduled depositions and never offered any explanation for her absences. Based on these repeated failures to comply with discovery, the government moved for a default judgment against Cannon, and for its expenses pursuant to Rules 37(b) and (d) of the Federal Rules of Civil Procedure. Also pursuant to Rule 37, Bell & Beckwith subsequently moved to dismiss Cannon's counterclaim and to recover its expenses in connection with the case.

A pretrial conference was held regarding the motions for sanctions against Cannon.

As a result of the conference, the court ordered that judgment be granted to the United States, that the government withdraw its application for attorney's fees and costs, and that the balance of the fund, after payment of Bell & Beckwith's expenses, be transferred to the United States. On May 17, 1983, the court issued an order distributing the remainder of the fund to the government. On the same day, judgment was entered by the United States Magistrate. Cannon appealed, asserting three claims for the removal of the district court judgment:

1) The district court judgment should be remanded because the basis for the judgment cannot be discerned;

2) The Magistrate Act, 28 U.S.C. § 636, is unconstitutional;

3) The district court judgment should be vacated because the court lacked jurisdiction to rule on Bell & Beckwith's interpleader claim.

## The Basis for the District Court Judgment

■ Initially we address Cannon's contention that the district court judgment should be remanded because the basis for the judgment cannot be discerned. This argument must be rejected. The district court clearly disposed of this case in response to a Rule 37(b) motion seeking sanctions against appellant for her failure to comply with discovery. This ruling may be reversed only if there has been an abuse of discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Hubbard v. Baltimore & Ohio Railroad*, 249 F.2d 885 (6th Cir.1957). Given Cannon's repeated, unexplained failures to appear for depositions, the basis of the decision is clear. Accordingly, pursuant to Rule 37 of the Federal Rules of Civil Procedure, we find that the disposition of the case was proper, and not an abuse of discretion.

## The Magistrate Act

■ Next, we analyze Cannon's assertion that the Magistrate Act is unconstitutional. We also find this argument to be without merit. The parties consented to have the case heard and judgment entered by a magistrate pursuant to 28 U.S.C. § 636. Cannon now contends that under *Northern Pipeline Construction Co. v. Marathon Pipeline*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), this procedure was unconstitutional because the magistrate was not authorized to exercise the power of an Article III Judge. However, the reasoning of *Northern Pipeline* does not apply in situations, such as this one, where the magistrate is acting with the consent of the parties. *See Pacemaker Diagnostic Clinic v. Instromedix, Inc.*, 725 F.2d 537 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Wharton-Thomas v. United States*, 721 F.2d 922 (3d Cir.1983); *see also KMC Co. v. Irving Trust*, 757 F.2d 752 (6th Cir. 1985) (holding the Magistrate Act constitutional).

## Federal Question Jurisdiction

Finally, we address Cannon's contention that the district court judgment should be vacated because the court lacked jurisdiction to rule on the plaintiff-appellee's interpleader claim. The parties agree that if jurisdiction is proper in this case, the only basis for jurisdiction is the general federal question jurisdiction statute, 28 U.S.C. § 1331. That statute provides federal jurisdiction in civil actions that "aris[e] under the Constitution, laws, or treaties of the United States." The difficulty with finding jurisdiction under Section 1331 is that Bell and Beckwith has asserted a federal claim against neither the United States nor Cannon.

■ Nevertheless, federal question jurisdiction exists in those cases in which the plaintiff's claim, though itself not raising a federal question, asserts a defense to a claim that would raise a federal question and that defendant could have asserted in a coercive action. The prototypical action in which this principle is invoked is a patent case in which a supposed infringer seeks a

declaratory judgment that he has not interfered with the rights of the patentee. *See, e.g., Cold Metal Products Co. v. E.W. Bliss Co.*, 285 F.2d 244 (6th Cir.1960); *Technical Tape Corp. v. Minnesota Mining & Mfg. Co.*, 200 F.2d 876 (2d Cir.1952); *E. Edelmann & Co. v. Triple A. Specialty Co.*, 88 F.2d 852 (7th Cir.1937). If the supposed infringer had not sought anticipatory relief, the patentee could have sued to enjoin infringement. Because the infringer's suit merely anticipates a coercive action by the patentee and the patentee's action would have arisen under the patent laws, the anticipatory action by the infringer likewise "arises under" federal law. *E. Edelmann & Co.*, 88 F.2d at 854; *Milwaukee Gas Specialty Co. v. Mercoid Corp.*, 104 F.2d 589, 592 (7th Cir.1939). The suit by the alleged infringer raises the same issue that could have been raised by the patentee, and therefore federal question jurisdiction exists.

The principle established in patent cases is consistent with the dictum in *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952), in which the Court stated, "Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the *threatened action,* and not of the defense, which will determine whether there is federal question jurisdiction in the District Court." The courts have not limited application of the principle to patent cases and have applied the principle in a wide variety of cases. *See e.g., Thomas v. Shelton,* 740 F.2d 478, 485 (7th Cir.1984) (federal question jurisdiction exists in suit that anticipates coercive action under Medical Care Recovery Act); *Wisconsin v. Baker,* 698 F.2d 1323, 1328–29 (7th Cir.), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983), (federal question jurisdiction exists in suit that anticipates coercive action under federal Indian treaties); *Serio v. Liss,* 300 F.2d 386, 389 (3d Cir.1961) (federal question jurisdiction exists in suit that anticipates coercive action under Labor-Management Reporting and Disclosure

Act). The principle has been approved in dicta in many other cases. *See, e.g., City of Saginaw v. Service Employees International Union, Local 446–M,* 720 F.2d 459, 461 (6th Cir.1983); *Superior Oil Co. v. Pioneer Corp.,* 706 F.2d 603, 607 (5th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 706, 79 L.Ed.2d 171 (1984); *Illinois v. Archer Daniels Midland Co.,* 704 F.2d 935, 940 (7th Cir.1983); *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 253 (7th Cir. 1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). Moreover, the Supreme Court recently noted that federal courts have regularly taken original jurisdiction over declaratory judgment suits where the declaratory judgment defendant could bring a coercive action that would necessarily present a federal question. *Cf. Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 5–7, 103 S.Ct. 2841, 2844–2845, 77 L.Ed.2d 420 (1983) (rule inapplicable when state seeks declaratory judgment because state should use its own courts).

As the court in *Franchise Tax Board* makes clear, the principle that federal jurisdiction exists if it would exist in a coercive action by the defendant has been invoked primarily in cases under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. We believe that the principle may also be applicable in situations, such as the case at bar, involving Rule 22 interpleader.

■ The question of whether an action arises under federal law is not dependent on an interpretation of the Declaratory Judgment Act. As the Supreme Court has made clear, determining whether the court has subject matter jurisdiction is analytically distinct from determining whether a party may obtain a declaratory judgment:

> "[T]he operation of the Declaratory Judgment Act is procedural only." *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240 [57 S.Ct. 461, 463, 81 L.Ed. 617]. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.... The Declaratory Judgment Act allowed relief to be

given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked. But the requirements of jurisdiction—the limited subject matters which alone Congress had authorized the District Courts to adjudicate—were not impliedly repealed or modified.

*Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). If the Declaratory Judgment Act did not extend the jurisdiction of the federal courts, then the principle that federal question jurisdiction exists in an action if such jurisdiction would exist in a coercive action by the defendant must result from a construction of the term "arising under" and not from a construction of the Declaratory Judgment Act. The Declaratory Judgment Act is a procedural device that permits parties to take advantage of the independently established principle of jurisdiction.

The Declaratory Judgment Act operates procedurally to broaden the class of litigants who might bring into federal court causes of action arising under federal law.... Though the underlying cause of action which is thus actually litigated is the declaratory defendant's, not the declaratory plaintiff's, this does not violate the requirement that what must arise under federal law is the cause of action in issue itself (regardless of to whom it belongs)....

*Lowe v. Ingall's Shipbuilding, a Division of Litton Systems, Inc.,* 723 F.2d 1173, 1179 (5th Cir.1984); *see also E. Edelmann & Co.,* 88 F.2d at 854 ("The Declaratory Judgment Act merely introduced additional remedies. It modified the law only as to procedure.... But the controversy is the same as previously."). If the Declaratory Judgment Act is only a procedural device that allows parties to make use of a particular construction of "arises under," it follows that other procedural devices may similarly permit parties to make use of the jurisdictional principle.

We believe that Rule 22 interpleader may be such a device. Rule 22 provides:

(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is *or may be* exposed to double or multiple liability.

(emphasis added). As the italicized language makes evident, a plaintiff may use an interpleader action to anticipate and accelerate a coercive action by the defendant. The issue to be adjudicated remains the same, but interpleader may be used "to reach an early and effective determination of disputed questions." 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1702 (1972). Interpleader is available "even though neither an action has been brought against nor a formal demand has been made on the stakeholder by some or all of the potential claimants." *Id.* at § 1707. Thus, the purpose of, and procedural advantage provided by, an interpleader action may be the same as that of the declaratory judgment action—the actions "enabl[e] a defendant to precipitate a plaintiff's suit in order to avoid multiple liability or other inconvenience." *Thomas v. Shelton,* 740 F.2d 478, 485 (7th Cir.1984). In interpleader actions as in declaratory judgment actions, federal question jurisdiction exists if such jurisdiction would have existed in a coercive action by the defendant.

Our application of the jurisdictional principle to interpleader actions is supported by precedent. In *Gelfgren v. Republic National Life Insurance Co.,* 680 F.2d 79 (9th Cir.1982), the court found federal question jurisdiction in a Rule 22 interpleader action. An employee welfare fund interpleaded claimants to certain death benefits. *Id.* at 80–81. The Ninth Circuit held that federal question jurisdiction existed because an action by the claimants against the welfare fund would have arisen under ERISA, 29 U.S.C. § 1132(a)(1)(B). *Gelfgren,* 680 F.2d at 81. Similarly, in *Bank of China v. Wells Fargo Bank & Union Trust Co.,* 209 F.2d 467 (9th Cir.1953), the court stated in dictum that federal question jurisdiction would exist in an interpleader action by a federally insured bank against a foreign central bank because a coercive action by

the foreign central bank would have arisen under federal law. *Id.* at 473–74.

Application of the jurisdictional principle in the instant interpleader action might involve any one of three coercive actions which Bell & Beckwith may have anticipated: an action by the United States against Bell & Beckwith; an action by Cannon against Bell & Beckwith; and an action between Cannon and the United States. The number of possible suits and the resulting complexities in the analysis require us to carefully consider the interplay between the state and federal claims and the judicial glosses on "arising under" jurisdiction as provided for in Section 1331.

■ Initially, we consider an anticipated action by Cannon against Bell & Beckwith. The underlying IRS claim is a tax lien on the investment account in Cannon's name, which the IRS contends is actually owned by the taxpayer Dr. Zimmer. Determining the ownership of the investment account is the threshold question in ascertaining the validity of the lien. *Acquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960).

■ Cannon asserts that a coercive action by her against Bell & Beckwith would have arisen under state law. Specifically, Cannon claims her contention that she, not Dr. Zimmer, was the owner of the investment account is properly resolved by state law. If resolution of Cannon's state law claim would have negated the need for a resolution of any federal law claim, Bell & Beckwith's interpleader action would not arise under federal law. Federal question jurisdiction is absent when "the right to be vindicated is State-created" and the action was "brought into the federal courts merely because an anticipated defense derived from federal law." *Skelly Oil Co. v. Phillips Co.,* 339 U.S. at 673, 70 S.Ct. at 880. In *Wisconsin v. Baker,* the Seventh Circuit explained the rationale for the *Skelly* rule:

The rationale ... is that the anticipated defense might never be raised, or if it is raised, never reached because the plaintiff fails to prevail on a preliminary issue of state law. There is no federal inter-est, and a strong state interest, in providing a forum for the litigation of purely state law issues between citizens of the same state.

*Wisconsin v. Baker,* 698 F.2d at 1328. Thus, if determination of the state law question raised by Cannon may have obviated the need for resolution of any federal issue, federal jurisdiction would be inappropriate. *See Shoshone Mining Co. v. Rutter,* 177 U.S. 505, 507–508, 20 S.Ct. 726, 727, 44 L.Ed.2d 864 ("[A] suit to enforce a right which takes its origin in the laws of the United States is not necessarily one arising under the Constitution or laws of the United States, within the meaning of the jurisdiction clauses ...")

It is evident that Cannon's claim in a coercive action against Bell & Beckwith would have arisen under state law and that resolution of her claim would have obviated the need to determine a federal question. The Internal Revenue Code provides that the IRS may "levy upon all property and rights to property ... belonging to" a person who refuses to pay his taxes. 26 U.S.C. § 6331(a); *see also* 26 U.S.C. §§ 6332(a), 6321. Cannon asserts in her claim against Bell & Beckwith and her cross-claim against the United States that the funds in the investment account "belong to" her, not to the taxpayer, Dr. Zimmer. In determining ownership of property for the purposes of taxation, the Supreme Court has held that:

[B]oth federal and state courts must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by the statute." *Morgan v. Commissioner,* 309 U.S. 78, 82 [60 S.Ct. 424, 426, 84 L.Ed.2d 1035]. Thus, as we held only two Terms ago, Section 3670 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law...." *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135.

*Aquilino v. United States,* 363 U.S. 509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960). Thus, the question whether the funds in the investment account "belong[ed] to" Cannon or Zimmer would be decided as a matter of state law. *See, e.g., Tillery v. Parks,* 630 F.2d 775, 776 (10th Cir.1980); *Paskow v. Calvert Fire Ins. Co.,* 579 F.2d 949, 950 & n. 2 (5th Cir.1978).

Resolution of that state law issue against the United States would have obviated the need for determination of any federal claim. Indeed, an examination of the pleadings in this case reveals that the state law question of the ownership of the investment funds was the only issue raised by any of the parties to this action. Because determination of a state-law issue could have obviated the need for resolution of any federal issue, examination of the possible coercive actions against Bell & Beckwith reveals that this interpleader action was not within the court's jurisdiction under 28 U.S.C. § 1331.

Our conclusion is not altered when we consider that Bell & Beckwith's interpleader action also anticipated a coercive action by the IRS and an action between Cannon and the United States. If Bell & Beckwith had simply refused to turn over the funds to the IRS, it could have been subject to penalty under 26 U.S.C. § 6332(c)(1) (penalty for failure to honor levy) and 26 U.S.C. § 6332(c)(2) (failure to honor levy without reasonable cause). Though a coercive action by the United States against Bell & Beckwith thus would have arisen under federal law, resolution of the threshold question of ownership pursuant to state law could have obviated the need to decide the federal question, thus federal jurisdiction need not exist. Furthermore, Bell & Beckwith disclaimed any interest in the interpleaded funds, thus the real substantial controversy was between Cannon and the United States. Given that the only dispute between those two litigants was purely a question of state law, federal question jurisdiction would not exist in an action between those parties.

■ Though the Eighth Circuit has found federal question jurisdiction in a case involving a tax lien greater than the formerly required jurisdictional amount of $10,000, we are not pursuaded by the reasoning of that court. Federal courts lack jurisdiction to entertain interpleader actions where, as here, resolution of a state law question could decide the matter. *But see St. Louis U. Trust Co. v. Stone,* 570 F.2d 833 (8th Cir.1978)[1]. The Eighth Circuit cited *United States v. Brosnan,* 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960), for the proposition that matters affecting the "nature or operation" of tax liens governed by federal statutes are federal questions, regardless of whether the federal statutes deal specifically with those matters or not. Unlike *Stone,* the instant case does not involve the "nature or operation" of the lien, but the threshold question of its validity. As we noted, 26 U.S.C. § 6331 provides for a levy upon "property" "belonging to" a taxpayer. The effect of such language is to incorporate state laws by reference into the federal law. *Aquilino v. United States,* 363 U.S. at 512–13, 80 S.Ct. at 1279–80; *United States v. Overman,* 424 F.2d 1142, 1144 (9th Cir.1970); *see also Shoshone Mining Co. v. Rutter,* 177 U.S. at 507, 20 S.Ct. at 726 (Federal question jurisdiction held not to exist when a claim arose under a federal statute that required disputes over the possession of certain lands to be "determined by 'local customs or rules of mines in the several mining districts …' "). Courts have consistently cited *Shoshone Mining* for the proposition that when federal law incorporates state law by reference and the issue of state law is the only or dispositive issue raised by the parties, the case does not arise under federal law within the meaning of Section 1331. *See, e.g., City National Bank v. Edmisten,* 681 F.2d 942,

**1.** The Eighth Circuit ruling was based in part on the presence of the $10,000 jurisdictional amount for federal cases which was repealed by Pub.L. No. 96–486 § 2(a), 94 Stat. 2369 (amending 28 U.S.C. § 1331). To the extent that our result deviates from the result or analysis in *Stone,* we decline to follow the Eighth Circuit's decision.

945 (4th Cir.1982); *Standage Ventures, Inc. v. Arizona,* 499 F.2d 248, 250 (9th Cir.1974); *Roecker v. United States,* 379 F.2d 400, 407 (5th Cir.), *cert. denied,* 389 U.S. 1005, 88 S.Ct. 563, 19 L.Ed.2d 600 (1967). *See generally* 13b C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure,* § 3563 (1984).

■ The real, substantial controversy is between Cannon and the United States. Since the only issue in controversy is a question of state law, albeit state law incorporated into federal law, the controversy between those two parties does not arise under federal law. Thus, although the action anticipated by Bell & Beckwith's interpleader may be said to be that between Cannon and the United States rather than any coercive action against Bell & Beckwith, the anticipated action does not arise under federal law within the meaning of Section 1331.

Accordingly, the decision of the district court is hereby reversed and remanded with instructions to dismiss the action for lack of jurisdiction.