**BLACKMON AUCTIONS, INC., Plaintiff,**

v.

**VAN BUREN TRUCK CENTER, INC.; Don Caricofe; Eva Caricofe; Jim W. Hale; Mary Jean Hale; and The United States of America, Defendants.**

Civ. No. 95–2067.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Aug. 28, 1995.

George Jay Bequette, Jr., Skokos, Bequette & Smith, Little Rock, AR, for plaintiff.

Edwin G. Dooley, Jr., Ft. Smith, AR, for Van Buren Truck Center.

Shelton Sargent, Ft. Smith, AR, for the Caricofes.

Philip A. Bagby, Van Buren, AR, for the Hales.

Nanci B. Scoblionko, Tax Div., Washington, DC, for IRS.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is an interpleader action initiated by the stakeholder, Blackmon Auctions, with regard to certain auction proceeds in its possession. Two claimants, Jim W. Hale and Mary Jean Hale, have filed a motion to dismiss for lack of subject matter jurisdiction. Another claimant, the United States of America, has filed a response in opposition. The motion to dismiss shall be denied.

### I. STANDARD OF REVIEW

In considering a 12(b)(1) motion to dismiss for lack of subject matter jurisdic-

tion, the complaint will be construed broadly and liberally in conformity with Rule 8(f). Fed.R.Civ.P. 12(b)(1); Fed.R.Civ.P. 8(f). All facts pleaded in the complaint are taken as true, and only favorable inferences will be drawn from the underlying facts. However, argumentative inferences favorable to the pleader will not be drawn. *See generally* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 2d* § 1350 (1990).

## II. BACKGROUND FACTS

The allegations in the interpleader complaint are as follows. The stakeholder, Blackmon Auctions, is an auctioneering firm that was employed by Van Buren Truck Center and Don and Eva Caricofe to auction off certain property. The net proceeds of the sale were $53,172.03, which Blackmon Auctions disbursed to the Caricofes by check.

Shortly thereafter, Blackmon Auctions learned that a dispute had arisen between the Caricofes and Jim and Mary Jean Hale over some $20,000 of the auction proceeds. The Hales filed a complaint in state court and named Blackmon Auctions as a party. Upon learning of the lawsuit, Blackmon Auctions stopped payment on the check to the Caricofes.

On March 18, 1995, Blackmon Auctions learned of another claim against the auction proceeds made by the Internal Revenue Service (IRS), when the IRS served Blackmon Auctions with a notice of levy on the auction proceeds in the amount of $32,346.79 for employment tax liabilities owed by Don Caricofe.

■ Blackmon Auctions has filed this interpleader action to extricate itself from the conflicting claims to the auction proceeds. The device of interpleader allows the stakeholder to put the money or other property in dispute into the court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court. *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 583 (D.C.Cir.1993).

Thus, this interpleader action will require a determination of the amount of funds owned by the Hales, the amount owned by Van Buren Truck Center, and the amount owned by the Caricofes, with the latter amount being subject to a tax lien by the IRS. On their motion to dismiss, the Hales claim that this court has no subject matter jurisdiction to hear this case.

## III. INTERPLEADER JURISDICTION

Interpleader may be brought in federal court under either the Federal Interpleader Act, 28 U.S.C. § 1335 (1988), or under Rule 22 of the Federal Rules of Civil Procedure. The Hales claim that subject matter jurisdiction does not exist under either statute.

■ The Federal Interpleader Act provides an independent basis for federal jurisdiction when there is minimal diversity between the claimants, *i.e.*, when at least two of the claimants are citizens of different states. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 530, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967). In this case, the individual claimants are all Arkansas citizens, and the claimant United States is not a "citizen" of any state for diversity purposes. *Commercial Union Ins., supra; Kent v. Northern Cal. Reg. Off. of Am. Friends Serv. Comm.*, 497 F.2d 1325 (9th Cir.1974). Therefore, there is no diversity.

■ Unlike the Federal Interpleader Act, Rule 22 is merely a procedural device and confers no federal jurisdiction. *St. Louis Union Trust Co. v. Stone*, 570 F.2d 833, 835 (8th Cir.1978). In fact, the central distinction between statutory interpleader and rule interpleader is that the latter does not provide courts with any independent basis for subject matter jurisdiction. 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1703 (1986). As such, district courts can hear Rule 22 interpleader actions only if some other statute provides a jurisdictional basis such as diversity or federal question.

As there is no diversity in this case, the issue is whether federal question jurisdiction is appropriate. The federal question jurisdiction statute, 28 U.S.C. § 1331, provides that "district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States."

■ At first glance, it might appear that an interpleader action can never arise under federal law, because an interpleader complaint "is typically one seeking discharge and is difficult to characterize as asserting either federal or state rights." *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1383 (9th Cir.), *cert. denied*, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 779 (1988). However, the clear consensus of the federal courts is that an interpleader action arises under federal law if any of the defendants/claimants asserts a claim arising under federal law. *See e.g., Commercial Union Ins.*, 999 F.2d at 585 (D.C.Cir.); *General Ry. Signal Co. v. Corcoran*, 921 F.2d 700, 706 n. 6 (7th Cir.1991); *Morongo Band of Mission Indians*, 858 F.2d at 1384 (9th Cir.); *Bell & Beckwith v. United States*, 766 F.2d 910, 912–13 (6th Cir.1985); *Boatmen's First Nat'l Bank v. McCoy*, 861 F.Supp. 846, 849 (W.D.Mo.1994).

■ Thus, to determine if this interpleader action arises under federal law, this court must examine the claims that will be asserted by the various claimants and determine whether any of these arise under federal law. This is the same method of analysis the courts use in declaratory judgment actions, where "federal question jurisdiction exists if such jurisdiction would have existed in a coercive action by the [declaratory judgment] defendant." *Bell & Beckwith*, 766 F.2d at 914. Declaratory judgments and interpleader actions are treated similarly for jurisdictional purposes, since both types of actions are merely procedural devices that "enable a defendant to precipitate a plaintiff's suit in order to avoid multiple liability or other inconvenience." *Id.* (quotation marks and brackets omitted).

In the present action, the claims made by the Caricofes, the Hales, and Van Buren Truck Center are all state law claims. The

right to the auction proceeds will depend on who employed Blackmon Auctions, who owned the property that was auctioned off, and who owns the net proceeds from that auction, which are all questions of state law.

■ Nevertheless, it could not be clearer that the IRS action to enforce the tax lien arises under federal law, since federal law created the cause of action, 26 U.S.C. § 7403(a),[1] and it is well-established that a suit "arises under" federal law if federal law creates the cause of action. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). In fact, in cases where "federal law provides both the substantive right and a remedy for that right . . . jurisdiction is taken as a matter of course." 13B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3562, p. 40 (1984).

Moreover, Congress has specifically provided for federal jurisdiction in any case involving federal tax law, 26 U.S.C. § 7402,[2] and the Eighth Circuit has expressly held that "matters directly affecting the nature or operation of such [tax] liens are federal questions, regardless of whether the federal statutory scheme deals with them or not." *St. Louis Union Trust Co. v. Stone*, 570 F.2d 833, 835 (8th Cir.1978) (*quoting United States v. Brosnan*, 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960)).

Given all this, the mystery is that both the Sixth and Seventh Circuit Courts of Appeal have dismissed interpleader actions where one of the claimants was the United States enforcing a tax lien. *Commercial Nat'l Bank of Chicago v. Demos*, 18 F.3d 485, 489 (7th Cir.1994); *Bell & Beckwith v. United States*, 766 F.2d 910, 912–13 (6th Cir.1985).

It appears to the court that the reasons for dismissal given by the Sixth and Seventh Circuits are deficient. First, these cases cite *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864 (1900), for the

---

1. "In any case where there has been a refusal or neglect to pay any tax, . . . the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien."

2. "The district courts of the United States at the instance of the United States shall have such jurisdiction . . . as may be necessary or appropriate for the enforcement of the internal revenue laws. . . ."

general proposition that a federally-created cause of action does not arise under federal law if the action simply incorporates state law by reference. On this reasoning, an action to enforce a tax lien does not always present a federal question, because the "nature and extent of the taxpayer's property interest is a matter of state law." *Commercial Nat'l Bank of Chicago v. Demos*, 18 F.3d 485, 489 (7th Cir.1994). Indeed, in this case, state property law will probably control all contested issues.

 Still, there are two major problems with this reliance on *Shoshone Mining.* First, the general rule is that a case arises under federal law if federal law creates the cause of action, even if that federal law simply incorporates state law by reference.

> The district courts have jurisdiction—indeed they have exclusive jurisdiction—of suits under the Federal Tort Claims Act even though the liability of the United States under the Act is determined in accordance "with the law of the place where the act or omission occurred." There are also other cases holding that when an Act of Congress expressly adopts state law, the state regulations become, in effect, federal law for the purposes of federal question jurisdiction.

13B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3563, at 56–57 (1984) (footnotes omitted). Moreover, this general rule "is also consistent with what is said about the nature of state law adopted as federal common law." *Id.* at n. 18.

It is true that *Shoshone Mining* indicates that there may be exceptions to this general rule. It is also true that a limited number of lower court cases cite *Shoshone Mining* as if it stated a general rule that a federal law which incorporates state law by reference does not present a federal question. But these cases are rare and usually confused in their analysis. *See City Nat'l Bank v. Edmisten*, 681 F.2d 942, 945 (4th Cir.1982) (applying *Shoshone Mining* even though the proper basis for dismissal was the well-established rule that a state-created cause of action does not arise under federal law simply because federal law authorized the state to

legislate in that area); *Standage Ventures, Inc. v. Arizona*, 499 F.2d 248, 250 (9th Cir. 1974) (applying *Shoshone Mining* even though the proper basis for dismissal was the well-established rule that an action to quiet title does not arise under federal law simply because title is traceable to the law of the United States).

This court has found only one case that actually applies *Shoshone Mining* as the sole basis for dismissal of a federally-created cause of action. *Roecker v. United States*, 379 F.2d 400 (5th Cir.), *cert. denied*, 389 U.S. 1005, 88 S.Ct. 563, 19 L.Ed.2d 600 (1967) (holding that a guardian's redesignation of a National Service Life Insurance beneficiary does not present a federal question). *Roecker* is very likely mistaken in relying on *Shoshone Mining*, an anomalous turn-of-the-century case.

In *Shoshone Mining*, the Supreme Court considered a federal statute that created a cause of action for people with "adverse claims" to mining lands. The statute expressly stated that "local rules and customs" should provide the rule of decision where appropriate. The Supreme Court held that the cause of action did not arise under federal law, but its reasons for doing so are not perfectly clear. The Court did rely on the fact that the federal cause of action presented only state law questions, but that is not normally a reason to dismiss for lack of a federal question. However, the Supreme Court did state a more practical ground for dismissal.

> If every adverse suit could be taken into the Federal courts, obviously in some of the larger Western States the litigation would not be "before some judicial tribunal located in the neighborhood where the property is," for in them the Federal courts are often held only in the capital or chief city of the State, and at a great distance from certain parts of the mining regions therein.

*Shoshone Mining*, 177 U.S. at 513, 20 S.Ct. at 729. In 1900, in an era before the automobile and before the Western States became developed, the distance between the land claimed and the court house was a compel-

ling concern and reason to depart from the general rule. No such compelling concerns exist in this case.

An even more critical problem with the Sixth and Seventh Circuit's reliance on *Shoshone Mining* to hold that an action to enforce a tax lien does not arise under federal law is that it could not be clearer that such an action does arise under federal law. *See* 26 U.S.C. § 7402; 26 U.S.C. § 7403(a); *St. Louis Union Trust Co., supra.* This fact is not changed simply because the cause of action comes before the court by means of interpleader.

Besides mistaken reliance on *Shoshone Mining*, the second reason why the Sixth and Seventh Circuits dismissed interpleader actions involving federal tax liens is a mistaken reliance on *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). Both circuits cite *Franchise Tax* for the proposition that a cause of action does not arise under federal law unless it presents "a substantial question of federal law." *See also Commercial Nat'l Bank of Chicago v. Demos*, 18 F.3d 485, 489 (7th Cir.1994) (*Franchise Tax* requires that a federal rule interpleader action involves a "substantial question of federal law"). Again, the reasoning is that an action to enforce a federal tax lien will often turn on construction of state property law, so there is no "substantial question of federal law."

There are two major problems with this reliance on *Franchise Tax*. First, it is true that *Franchise Tax* stated that a cause of action does not present a federal question unless it involves a "substantial question of federal law," but that is only if the cause of action was created by *state law*. *Franchise Tax, supra. Franchise Tax* did not suggest that a federally-created cause of action does not present a federal question merely because it does not present a substantial question of federal law. As described above, if a cause of action is created by federal law, *as it is in this case*, then a federal question exists as a matter of course.

The second major problem with the Sixth and Seventh Circuit's reliance on *Franchise Tax* is that the Court's actual rationale for dismissal is not remotely applicable to interpleader actions involving federal tax liens. In *Franchise Tax*, California law gave the state taxing authority the power to collect unpaid taxes by levying on funds held in Employment Retirement Income Security Act (ERISA) trusts. The state filed a state declaratory judgment action in state court seeking a declaration on the preemptive effect of ERISA. The ERISA trustees removed to federal court.

■■■ In the typical declaratory judgment action, as with the typical interpleader action, a federal question exists if any one of the declaratory judgment defendants could have brought a coercive action in federal court. The Supreme Court assumed that the declaratory judgment defendants, the ERISA trustees, had a federal cause of action under section 502(3)(a) of ERISA, which grants ERISA trustees a cause of action for injunctive relief when their rights and duties are at issue. The Supreme Court also held that a "substantial question of federal law" existed because "it is clear on the face of its well-pleaded complaint that appellant may not obtain the relief it seeks in its second cause of action ... without a construction of ERISA and/or an adjudication of its preemptive effect and constitutionality—all questions of federal law." *Franchise Tax*, 463 U.S. at 14, 103 S.Ct. at 2849.

Nevertheless, the Supreme Court dismissed the case for lack of jurisdiction based on reasons of "practicality," "necessity," "common sense," "the spirit of necessity and careful limitation of district court jurisdiction," and other "good reasons." *Id.*, 463 U.S. at 20, 103 S.Ct. at 2852. These practical reasons boiled down to the fact that the Court felt that, as a "realistic" matter, the exercise of federal jurisdiction over the state's declaratory judgement suit would simply allow ERISA trustees, and others who fell under state regulations arguably preempted by federal law, to remove such suits to federal court every time, thus defeating the state's choice of the state forum. *Id.* at 21, n. 22, 103 S.Ct. at 2852, n. 22. *See also* 10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure* § 2767, at 213–16 (Supp.1995).

These important concerns of federal-state comity do not exist in this case. In *Franchise Tax,* the main concern was to preserve the state's choice of forum. In the present action, the United States will actually lose its choice of forum if the court fails to maintain federal jurisdiction. In fact, the United States would lose its choice of forum in every tax lien case in which their claim is part of an interpleader action, which will by no means be uncommon. Therefore, the practical considerations of *Franchise Tax* simply do not apply in this case, and there is no justification for the outcome reached by the Sixth and Seventh Circuits in *Bell & Beckwith, supra,* and *Demos, supra.*

Finally, in addition to *Shoshone Mining* and *Franchise Tax,* the Seventh Circuit gave another reason that interpleader actions involving tax liens do not arise under federal law. *Demos,* 18 F.3d at 490. The Seventh Circuit reasoned that because the Declaratory Judgment Act, 28 U.S.C. § 2201, precludes a suit to declare a party's right with respect to tax issues, it would be anomalous to allow similar suits as interpleader actions. This court disagrees. First, the reasons that a taxpayer would want to precipitate a tax lawsuit are a lot different from the reasons that a stakeholder subject to conflicting claims, including a tax lien, would want to file an interpleader. Second, 28 U.S.C. § 2410 specifically waives the United States' sovereign immunity when it is a defendant in an interpleader action involving a federally-created lien. This presupposes that such suits can be filed. In fact, if such lawsuits are filed in state court, the United States has the right to remove pursuant to 28 U.S.C. § 1444.

## V. CONCLUSION

This case should be in federal court. A complete review of the pleadings indicate that while the Hales' claim to the auction proceeds is likely to be contested by Van Buren Truck Center, the Caricofes and Van Buren Truck Center are more likely to settle their respective claims in a collusive fashion. In fact, the current state of the pleadings raises the possibility that the Caricofes will simply concede that the auction proceeds belong to Van Buren Truck Center, which will effectively avoid operation of the tax lien on those proceeds. It is under these circumstances that the United States is actively trying to maintain federal jurisdiction, and this court thinks that they should have the ability to do so, and that a federal question exists.

This conclusion is consistent with the Eighth Circuit's decision in *St. Louis Union Trust Co. v. Stone,* 570 F.2d 833, 835 (8th Cir.1978), in which the court sustained jurisdiction in an interpleader action involving a federal tax lien. There are two reasons that this court did not just treat *Stone* as controlling. First, the Eighth Circuit decided *Stone* before the federal courts developed the current method of jurisdictional analysis in Rule 22 interpleader cases. Second, the Seventh Circuit case finding no jurisdiction in interpleader cases involving federal tax liens, *Bell & Beckwith,* 766 F.2d at 916, distinguished *Stone* on its facts since, in *Stone,* the issue was whether the government's lien was invalid because the Department of Justice had promised a certain claimant that it would ask the IRS not to execute the lien. Thus, there was arguably a substantial question of federal law on the facts of that case. The Sixth Circuit also held that if the Eighth Circuit would exercise jurisdiction over an interpleader action that did not involve such clear federal issues, then *Stone* was rejected.

This court concludes that *Stone* means what it said, and that in an interpleader action, "matters directly affecting the nature or operation of such [tax] liens are federal questions, regardless of whether the federal statutory scheme deals with them or not." *St. Louis Union Trust Co. v. Stone,* 570 F.2d 833, 835 (8th Cir.1978) (*quoting United States v. Brosnan,* 363 U.S. 237, 240, 80 S.Ct. 1108, 1110, 4 L.Ed.2d 1192 (1960)).

In any case, it would be absolutely futile to dismiss this action, since once it was filed in state court it would simply be removed by the United States pursuant to 28 U.S.C. § 1444, which provides that "[a]ny action brought under section 2410 of this title against the United States in any State court may be removed by the United States." Actions under section 2410 include suits "of

interpleader or in the nature of interpleader with respect to real or personal property on which the United States has or claims a mortgage or other lien." Therefore, even if Blackmon Auctions has to file this action in state court, the United States will be able to remove it, which it routinely does in cases where it has a lien at stake. For the above reasons, the motion to dismiss is denied.

IT IS SO ORDERED.