PEPSICO, INC., Plaintiff,

v.

**CENTRAL INVESTMENT CORPORATION, INC., et al., Defendants.**

No. C–1–98–389.

United States District Court, S.D. Ohio, Western Division.

April 10, 2002.

Stephen Joseph Butler, Thompson Hine LLP, Cincinnati, OH, Roger Pascal, John C. Martin, Thomas Paul Luning, James A. Clark, Caroline K. Sheerin, Kevin S. Hovis, Annaliese F. Fleming, Anne Hall Burkett, Schiff Hardin & Waite, Chicago, IL, Renee S. Filiatraut, Thompson Hine & Flory LLP, Cincinnati, OH, Robin M. Spencer, Schiff, Hardin & White, Chicago, IL, Pamela C. McGuire, Somers, NY, Thomas B. Quinn, Schiff, Hardin & Waite, Chicago, IL, Gerard W. Casey, Purchase, NY, Robert A. McMahon, Eberly McMahon Hochscheid LLC, Cincinnati, OH, for plaintiff.

G. Jack Donson, Jr., Taft Stettinius & Hollister, Cincinnati, OH, James Burdette Helmer, Jr., Helmer Martins & Morgan, Cincinnati, OH, Helen G. Kirsch, Judith L. Harris, Reed Smith Shaw & McClay, Washington, DC, William A. Georghegan, Reed,

Smith, Shaw & McClay, Washington, DC, for defendant.

## ORDER

BECKWITH, District Judge.

This matter came before the Court on April 5, 2002 for a hearing on Plaintiff Pepsi-Co, Inc.'s ("PepsiCo") objections (Doc. No. 285) to Defendant Central Investment Corporation's ("CIC") submission of legal fees and expenses (Doc. No. 277). For the reasons that follow, PepsiCo's objections are not well-taken and are **OVERRULED.**

CIC submitted a bill for fees and expenses in conjunction with an order issued by Magistrate Judge Hogan finding that PepsiCo had committed discovery abuses with respect to documents related to "Project Broncos," a code name given by PepsiCo to a plan to consolidate its bottling operations. Magistrate Judge Hogan found that PepsiCo had withheld Project Broncos documents from CIC for strategic purposes, but found that the evidentiary sanction sought by CIC was inappropriate. Rather, Judge Hogan found that a monetary sanction, which did not affect the merits of the case either way, was appropriate. Therefore, Judge Hogan directed CIC to submit the legal fees and expenses it incurred in preparing the motion to compel which eventually brought to the surface Project Broncos, and the motion for sanctions. In response, CIC submitted a bill for $101,519.00 in attorney's fees and $1,537.98 in related expenses.

PepsiCo then objected to Magistrate Judge Hogan's finding that sanctions were warranted and to the amount of the bill submitted by CIC. This Court, by order of February 13, 2002 (Doc. No. 296) affirmed Judge Hogan's conclusion that PepsiCo withheld the Project Broncos documents from CIC in bad faith and that monetary sanctions were appropriate. The Court then directed that a hearing be held on PepsiCo's objections to CIC's submission of fees and expenses. The Court presided over the hearing on April 5, 2002. During the hearing the Court heard argument from counsel for both parties, as well as the testimony of former Ohio Supreme Court Justice Craig Wright, whom CIC presented as a expert on the reasonableness of its fees. The reasonableness of a sanction, however, is committed to the trial court's discretion. See Taylor v. Medtronics, Inc., 861 F.2d 980, 985 (6th Cir. 1988) (imposing Rule 37 sanctions are reviewable only for abuse of discretion.). Therefore, while the Court respects and appreciates the breadth of Justice Wright's knowledge and experience, because the resolution of the issue is committed to the Court's discretion, whether CIC's legal fees are reasonable is not an appropriate topic for expert testimony. Thus, the Court has not considered Justice Wright's testimony in reaching its conclusion.

In addition, PepsiCo submitted a notebook of exhibits which generally fall within one of two categories. The first group of exhibits (Exs.1–3) are colorful pie charts and bar graphs which purport to demonstrate that the fees that CIC incurred in extracting the Project Broncos documents from PepsiCo were minimal compared to the overall award sought. The second group of exhibits (Exs.4–10) were apparently submitted to reassure the Court that either a) Project Broncos is not the threat that CIC perceives it to be; or, b) that the Project Broncos documents were not withheld in bad faith. The first contention, however, is an issue that is properly reserved for the jury and the second contention is foreclosed by the Court's finding that PepsiCo engaged in sanctionable conduct. Therefore, these exhibits have not entered into the Court's deliberations either.

CIC's legal fees of $101,519.00 break down into two components—$34,678.75 (157.80 total hours) in expenses incurred preparing the motion to compel and $66,840.25 (270.90 total hours) spent preparing the motion for sanctions. PepsiCo does not quarrel with the hourly rates charged by CIC's attorneys. Rather, PepsiCo's challenge to CIC's legal fees is limited to contesting the reasonableness of the hours spent on each project. With regard to the hours spent on the motion to compel, PepsiCo argues that there must be a "nexus" between the hours spent briefing the particular discovery request and the overall sanction awarded. In this case, because discovery requests concerning bottler

consolidation plans occupied but a small portion of CIC's original motion to compel, PepsiCo argues that the sanction on the motion to compel should reflect that proportion. Next, with respect to legal fees based on the motion for sanctions, PepsiCo argues that because Judge Hogan awarded CIC a "lesser" sanction of legal fees and expenses, instead of the evidentiary sanction CIC originally sought, CIC's motion for sanctions was not "successful." Thus, PepsiCo essentially argues that CIC's fees on the motion for sanctions should be reduced to reflect its degree of success on the motion. Overall, PepsiCo suggests that the overall sanction should be in the neighborhood of $10,000.

CIC counters that there is nothing in Magistrate Judge Hogan's order which suggests that he awarded sanctions solely because PepsiCo withheld Project Broncos documents. CIC notes that it prevailed substantially overall on its motion to compel and that, therefore, it is entitled to recover all of its expenses on the motion. CIC also suggests that the fees it claims as a sanction are appropriate as a deterrent and punitive measure. Finally, CIC derides the notion that it should receive less than its total expenses because it did not get the relief it originally sought.

PepsiCo's "nexus" argument comes from the U.S. Supreme Court's decision in *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), in which the Court stated:

> Rule 37(b)(2) contains two standards—one general and one specific—that limit a district court's discretion. First, any sanction must be "just"; second, the sanction must be specifically related to the particular "claim" which was at issue in the order to provide discovery. While the latter requirement reflects the rule of *Hammond Packing* [*Co. v. Arkansas*], *supra*, [212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909)] the former represents the general due process restrictions on the court's discretion.

*Id.* at 707, 102 S.Ct. 2099. We think it is possible that PepsiCo reads this case too narrowly by suggesting there must be an absolute correlation between the time spent on the discovery request and the overall sanction sought. The Court's use of the word "claim" in the opinion may simply mean that the trial court may not as a sanction strike an entire multi-count complaint when a discovery request only relates to one claim for relief. The Sixth Circuit has suggested that this interpretation is correct; albeit in an unreported case. *See Polanski v. Detroit Police*, No. 85–1503, 1986 WL 17175, at *3 (6th Cir. June 6, 1986) ("The sanction of striking the appellant's complaint is also specifically related to the 'claim' which was at issue."). The Court further notes that in the Tenth Circuit, a nexus between the noncompliance with the rules and the amount of fees and expenses sought is required only in the absence of a finding of bad faith. *See Turnbull v. Wilcken*, 893 F.2d 256, 259 (10th Cir.1990). In this case, the Court has already found that PepsiCo withheld the Project Broncos documents in bad faith. Thus, a nexus between the fee sought and the conduct at issue may not be necessary.

The Court, however, need not definitely resolve the nexus argument at this time. Rule 37(a)(4) provides:

> 4) Expenses and Sanctions.
>
> (A) If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 34(a)(4)(A). Thus, by its terms, Rule 37(a)(4)(A) requires the Court to award the moving party its legal fees when it grants a motion to compel, except in circumstances not pertaining here. In this case, Magistrate Judge Hogan granted CIC's motion to com-

pel almost in its entirety. This Court affirmed that decision over PepsiCo's objections except for several discovery requests which were subsequently mooted by the Court's ruling on summary judgment and not because the requests themselves were not meritorious. Thus, because CIC substantially prevailed on its motion to compel, under Rule 37(a)(4)(A) it is entitled to recover the legal fees and expenses it incurred preparing the motion.

■ Next, the Court finds no merit in the contention that CIC's fees related to the motion for sanctions should be reduced because it did not get the relief it sought. This is not an application for fees by a civil rights litigant in which the Court must gauge the plaintiff's degree of success versus the relief sought. *See, e.g., Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). Rather, this matter is before the Court on an application for sanctions because PepsiCo violated the Rules of Civil Procedure and an order of the Court. As CIC suggested at oral argument, discovery sanctions have a legitimate deterrent and punitive purpose. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 763–64, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) ("Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, and to deter those who might be tempted to such conduct in the absence of such a deterrent.") (quoting *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976)). A litigant who decides to engage in bad faith conduct must accept the fact that his opponent may go to great lengths to remedy the wrong, as CIC has done in this case. The guilty party should not then be heard to complain that the other party's expenses should be reduced because, in the words of PepsiCo's counsel, it "shot the moon" but did not get the last card. Awarding CIC the amount it spent preparing the motion for sanctions puts the risk of engaging in bad faith conduct where it belongs—on PepsiCo, the malfeasor.

■ Overall, the Court believes the fee award sought by CIC is just and reasonable for several reasons. First, as Magistrate Judge Hogan pointed out, a monetary sanction does not affect the merits of the case.[1] Second, although in the abstract $101,000 is a large sum of money, in the context of the amounts at stake in this case as well as the millions of dollars the parties must have already spent litigating this case, the fee sought is relatively small. Third, CIC does not seek reimbursement for every conceivable moment spent litigating the motion to compel and the motion for sanctions. For instance, counsel for CIC indicated that CIC was not seeking to recover legal fees incurred for the sanctions hearing itself. As a result, the sanction sought is self-limiting at the onset. Finally, all of PepsiCo's misconduct did not come to light until after CIC instituted the sanctions process. As noted in the earlier order (Doc. No. 296), PepsiCo did not produce approximately 1,500 pages of Project Broncos-related documents until after CIC filed its first brief on sanctions. Withholding these documents might have adversely affected not only the merits of the case, but also had the effect of concealing the extent of PepsiCo's misconduct and could have prejudiced the merits of CIC's motion for sanctions. Thus, a full award of sanctions recognizes the seriousness of the misconduct at issue.

Under the totality of the circumstances here, the Court finds that CIC's petition for fees and expenses is just and reasonable. Accordingly, PepsiCo's objections to Magistrate Judge Hogan's order regarding sanctions (Doc. No. 268) and objections to CIC's submission of legal fees and expenses (Doc. No. 285) are not well-taken and are **OVERRULED.** PepsiCo shall pay CIC's legal fees of $101,519.00 and expenses of $1,537.98 as a sanction.

**IT IS SO ORDERED**

---

1. A sanction more severe than a monetary award, although not one sought by CIC at this point and one which will not be granted, would have been to preclude PepsiCo from arguing or presenting any testimony that Project Broncos was not a devious plan to eliminate independent bottlers, as CIC contends.